Next case is in Ray. The marriage of Susie Heller versus Robert Taylor. And, uh, what's the blood? Are you ready to proceed? Please do so. Please. Council always a pleasure. Okay. Hope you all survived the Easter holiday attack. At least we got this far. I won't take all my time unless there's a lot of questions. There's only two things I want. First one is this court's 1996 opinion in the case of marriage Lake. Second, I think it controls the case. First district going all the way back to when I was in law school, said that if an oral agreement was made court to settle the case, murder state either party and the right to change his mind to be dissatisfied. Just change his mind. No calls. Change your mind until the judgment was entered. In the eighties, second district appellate court picked up that state and then later this court followed suit. Yeah, we could talk about abortion. I think it was. We talked about closet. But I think the simple holding it later has to control his case. I think that other matters were brought to the circuit court's attention that infuse the circuit court made him get away from this. They should even always very clearly raised because he didn't address it specifically. And I want to not make that same state. I want to make sure that this court right you advocate that the rule is that even after both sides appear before the judge, affirm under oath that this is their agreement and everything's done except preparing in written form what has already been done as far as the walk away from the agreement. Your Honor, that's my position. That's what I shouldn't put my position. I don't know what my position is doing. That's what why would anybody ever even bother to put it on the record? If you make an agreement at the courthouse, you know, why even bother? Then why wouldn't you just go back to your office prepared in written form? Then have everybody show up. It's good question. And I expect 99% of the time, 99.9% of the time the agreement is going through. This is a rare case, and this would apply to any type of case, not just divorce cases. Is that what you're saying? Well, they can say that later. It's pretty specific about that property settlement between married persons, particularly when substantial financial assets are involved, cannot be concluded by the party's oral consent when it is diligently challenged before decree is added. That's pretty limited. And it happens infrequently enough that we don't even have cases in the third or fourth. I just don't think it happens that much. And we heard in the last oral argument about tempting fate, and I think it's kind of tempting fate when you change your mind. I don't know. I don't know if it's a good strategy. I like to say at my office, careful what you wish for. No, there's lots of reasons not to exercise that right, and I think it's always going to be rare to exercise that right. But it's still right. That doesn't make it not right. The facts in Lakin were different, though, too, weren't they? I mean, that wasn't that a situation where both parties wanted to make changes and both parties had some objections and... I agree. And I think we could argue about whether it's difficult or an alternative route. But the rule stated in the case that Crawford and Perry, I don't see how anybody could argue it was anything but a holding of the case. Crawford in particular, she just literally changed her mind. The court said, the question is, did she just express dissatisfaction and that's enough? That's the way the Crawford court frames the issue. So now we've got this rule. I mean, we've got this statement by this court, and we're not just litigators, we're counselors. We tell our clients, at practice, but presumably we tell our clients that, well, we're gonna try to get this through today, but you do have the right until it's written and entered to get out. You do have that right. Presumably that's part of the counsel. Anybody who knows the case knows and we're all presumably aware of the law. What did the judge tell him here? The judge told him this is it. When you walk out of here, it's over. You've made the agreement. Everybody said, we'll live with that. That was the agreement. That was what was said, yes. And I put it all, I didn't just put it in my statement of facts, I even put it in the appendix. I mean, candor is candor. But I also don't think it matters. Yeah, I think it's important. Longest Lincoln's on the books. I mean, it's been there since 96, which seems like yesterday for me. Still, still that I mean, it's a published case, so leave to appeal tonight for what that's worth. But still it's there, and it seems to me that there probably are attorneys who are telling their clients we're gonna try to do this. You have the right to get out, and then they don't exercise that right. But that's going to be what people are advised that no law, whose attorneys know the law, that's going to be the council. Yeah. Which way is it? Does it make people say, Well, okay, I can get out of the trial date, but I'll say yes, you know, and then I'll change my mind. Or does it go the other way? Does it help people into an agreement? Is it actually something that helps them agree? It's actually something that kind of slides them into the deal. I don't know. I don't know which way it comes. The only thing I really don't know is that's what Lincoln said. That's what Lincoln said. That's what this court wrote 96 16 years later. That's the last statement on this board on that issue. And I think in all fairness, it being part of the law that it ought to be treated with the respect that started this is generally it. I don't think it's a bad rule. Certainly not a ridiculous rule. That's the rule. Just asking adhere that this that my client get his day in court judgment. Which I have might be another might be part of the process. There are no questions. Don't be the trouble. This is for any further. Thank you. Council. When you're ready, proceed. Yes, sir. Um, I didn't intend to start with Lincoln, but I'm happy to. I don't think that case has ever been cited by another public court. In Lincoln, there was a dispute about the tax consequences, and both parties in that case told the quarter apparently according to opinion were afraid they would be involved in post judgment litigation interpreting the thing. So there wasn't a meeting in the minds of that case. There was a dispute. Both parties anticipated the need for further litigation by a post trial motions to clarify and interpret the disputed provisions. Should the proposed judgment be on both the petitioner and the respondent had concerns about the tax implication. There's nothing like that in this case. Nothing like that. Doesn't Lincoln basically turn on an abuse of discretion by the trial court and not considering their problems? I'm not sure I can answer that. I mean, I think obviously the site wasn't, you know, use of this question to make the settlement agreement part of the judgment, but I think that was in light of these peculiar facts in Lincoln. Now, this court also had the Henry Lorton case, which is, I think, a 1990 case. So it's just the opposite. In fact, in order to understand lots of testimonies of Fayette County case, Judge Kelley, this court affirmed his entry of that judgment. Henry Lorton, I think I cited in my brief. It's certainly in the submissions in the record. So Lorton is a published opinion as well. And it says, no, you can't just change your mind. And let's think about the rule of law that's being advocated here in the reply. There are only two conditions for applying the Lakin-Crawford rule, and both are present here. First, substantial financial assets over 1.2 million are involved. Second, Robert challenged the oral agreement before a decree was ever. If that's the rule of law, we show up for trial for whatever reason we don't want to go to trial. Maybe we're not prepared. Maybe the lay helps us because we can hide assets as more time goes on. Maybe we're just hired that day. So we go in and we prove it up and cite the record and the field on the record to the judge. And then we walk away and wait 29 days and say, oh, we changed our mind, Judge, set the thing back down for trial. And then we get, you know, 15 more case management conferences, and then we get a trial day, vendors continuous, which happened in this case, by the way. The case was case managed to death. It was set for trial on three occasions. It started back in October of 1997 and wasn't resolved until the settlement agreement of March 17, 2011. And at the time, did you say 97? It started 2000. Okay. I'm sorry. I just, it was decades slip by on me as well. It would be a lot of case management conferences. Okay. Judge Sweet went through everything. He bent over backwards and this wasn't a hasty deal. This was done late morning. The record establishes this. He asked the parties of their own address. Robert said, no. He asked if they understood the agreement. It was specific detail by the judge, both before and after the submission. And the judge said, you can't change your mind. This is the deal. And he says, you can read it, but you can't change it. If a judge says you can read it, you can consider it, you can take all the time you need to consider it. You can consult with your attorney. Once it's done in open court, you cannot change your mind. Doesn't that preclude the judge's exercise of discretion, which he or she is bound to do under the statute, bound to consider certain statutory factors in approving an agreement, in signing an agreement, and precluding anything that comes up later that might involve one of those statutory factors, doesn't it essentially lock the judge out of the discretion the judge is supposed to exercise? No. Why not? Well, the person challenging the agreement has to show that it was either unconscionable or that the agreement was a result of duress or fraud or other matter that is contrary to public policy. I'm not concerned about that. I'm concerned about the judge basically taking the position. This is it, no matter what you come up with. Subsequent to this appearance in court and putting this on the record, it will not fly. Therefore, I am limiting my discretion in the myriad of factors that come up in divorce litigation. I'm not sure I'd say it that way, Judge, but because the statute itself, the Illinois Marriage and Dissolution of Marriage Act, tells the judge that, and this is section 502, and this is cited in the Burke case that was cited in the reply brief in Appellant House brief. Amical settlements of disputes between the parties to a marriage attended upon dissolution of the marriage, the parties may enter into a written or oral agreement containing the provisions for disposition of any property owned by either of them, maintenance of either of them, support of the children, subsection B. This is where I'm trying to answer your question. The terms of the agreement are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties on their own motion or on request of the court, that the agreement is unconscionable. There's not a whiff of unconscionability in this case, not a scintilla of evidence, not an allegation, not a claim, none of them. And then this Burke case also goes on to say that the section does not eliminate many of the traditional grounds for setting aside settlement agreements, including grounds of fraud, coercion, and violation of any rule of law, public policy, or morals. So the judge doesn't lose all of his discretion. If it's a conscious law agreement, he does, and that's mandated by the statute. And I think that's a reasonable statute. I think that's the way it has to be. We settle these divorce cases all of the time. I mean, if we couldn't go into court and settle them on the day of trial, the litigation would be immense. And I disagree that it's uncommon that somebody has a change of heart or somebody doesn't like a particular provision. There's always some provision that the other attorney decides, well, we ought to tweak this just a little bit. And that's what's going to happen. We're going to end up litigating each issue and then the delays will dismount. None of this was raised in the trial court. In the trial court, it was claimed that he was supposed to get a bonus and he didn't get it. And Judge Sweet found that claim to be incredible, considering he was a chief operating officer at a company of plant maintenance services LLC most of the time during this delay. And if you look at our statement of facts, I think it's reasonable to assume that he was trying to make money from us. We figured it out right before trial. But I think it's reasonable to conclude that. The only allegation to overturn the agreement in the trial court was a claim of a mistake of fact. His mistake of fact, right? I mean, as you just said, none of this about the Lakin case or anything like that was raised at all in the trial court. The Lakin case is cited in one of the briefs. And I also dealt with the Lakin case. And I think the Lakin case is an anomaly. I really do. But it's there. It's published opinion. We've got the Wharton case. It says just the opposite. I think the Lakin case has some disagreements among the parties, which is what makes the difference in it. But there was a dissent. Pardon me? There was a dissent. Right. Thank you for reminding me. Yes, there was a dissent. And to call this the Crawford-Lakin rule, the reason I talked about this Birch case is the Birch makes it clear that before 1980, the Crawford rule was a different rule. The Crawford rule was that the settlement agreements would be approved if the court found them to be fair and reasonable, but the statute was changed to have this unconscious stability statement standard. So I think those early cases aren't applicable. The ones after it in Birch, for instance, the spouse, woman, attempted to hide a piece of property and it was discovered. In one of the other ones, they all have some kind of underlying either fraud or tremendous haste. And there was none of that. Everybody was prepared when we showed up to try the case. And this was a resolution that we thought was fair and reasonable and conscious and it was. Any other questions? No, thank you. I think to follow that Lakin rule literally in too far will cause lots of mischief. If you do it, publish it so we all know what we're doing. I hope you don't follow it. I think you should follow Morton, which is also a decision of this court, which sustains our position. And as to the fact, the facts, and as to the fact that none of these other things that they allege in their original brief were alleged or proved, the rest, nothing about the rest. Misunderstanding about the maintenance terms, nothing about that. Claiming that it was a condition preceded to have the written agreement. There was nothing about that in the allegations for the group. Thank you. Thank you. Rebuttal. Thanks again. I ask you a question about what you're calling the Lakin rule. Say there are two parts to it. One part is substantial assets. How does the court determine whether or not there are substantial assets? I mean, in every divorce case, everything the party's own is up for grabs and I thought about that. So for them, it's always substantial assets. It's everything, right? I think that substantial assets is more of a rule than an exception. Heck, it's what, I may not have much, but it's all I got. Right. Yeah. And so I think that, I think that's sort of a way that the court could say in appropriate circumstances, hey, what are we talking about? This is, there's nothing here. Can't take the settlement out. I think it's, I think the substantial assets is the 99%, not the 1%. The way I view it. What else would be fair? But that's something that'd have to be decided on a case by case basis. I guess. Supposedly. We're on seven pages here. Substantial. Even, even, even by my judgment. Thank you for what? Lincoln case. Never, never cited by the appellate court. Never followed. Never cited. Never criticized. Never questioned. Never overruled. And that's in 16 years. And what we're getting is so, we're getting this floodgates. Pardon me. And yet here is a rule that hasn't been mentioned in 16 years. And that goes where I, I agree, I agree, but I disagree as to what needs. It's just, it doesn't come up that much. Doesn't. Look, Bob had to hire me to get upgrades. There was all the proceedings in the circuit court. There's the question. Like I said, there's the tactical question of whether you should even do something. If this happens all the time, why are we here in Lincoln, Lincoln, Lincoln, Lincoln? Why don't we have two pages of citations? 10 pages on lesson. We know it just doesn't happen much. This is a rare case. So rare that although the Lincoln rule apply, the circuit court didn't know about it. Seems like the only one who did was my trial. It's great. Oh, I just don't think that you can pull this very many times. I think there's coercion in this case. Inherent, inherent in the circumstances. And that's what I think cases like that, and especially Crawford Herring go to is any time you're in a circumstance, the speed of the thing is coerced.  Your own counsel, as well as opposing counsel. I mean, they're working together and they're working together to some extent to avoid losing a trial. I mean, that's the way lawyers win a trial for sure. If they said it, they don't have to do it. And we're just naturally, we hope to get an agreement. There's an element of coercion there. Certainly, when the judge says it's coerced in this case. Lincoln, Crawford, Herring. This is a good rule. It's a good rule. There's reasons besides concluding that the oral deal is a good deal that would make you say yes. In every one of those cases, there is. And if afterwards, you're not satisfied with the deal, if you really want to go up to a judge who said, this is the deal no matter what, and say, would you exercise your discretion instead of decide, good luck. I mean, it's not going to be easy. Not to mention, of course, if he does set aside, you got to ask him to give you a split of the property. Look out on that. I'm just saying. It's a rare case. 16 years, not a word about Lincoln. Nobody even knew about it. It's a rarely used point. It's a reasonable point. Beyond that, it's the rule. It's this court. It's what this court said. It's what this court said. And I don't think you want to pull it out from under Bob Allen. Because the fair warning in this case, the fair warning to Susie in this case. He had the right to pull out. She had the right to pull out. Hey, she could be on the other foot. Both had the right to pull out. Take the risk. Take the expense that was attended to. Both had the right. Happy Easter. Thank you. Thank you. We're going to take a short break. Well, first, let me thank you both for your very interesting arguments and briefs and we'll get you to say thanks. We're going to take a short break.